IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-001859-RBJ

COLORADO HOSPITALITY SERVICES INC.,
a Colorado company d/b/a Peoria Hospitality, LLC,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY, an Ohio company,

    Defendant.

**Consolidated with**,

Civil Action No. 15-cv-01046-RBJ

OWNERS INSURANCE COMPANY and
AUTO OWNERS INSURANCE COMPANY,

    Petitioners,

v.

COLORADO HOSPITALITY SERVICES, INC.,

    Respondent.

---

ORDER

---

    Before the Court are Colorado Hospitality Services, Inc.'s motion for partial summary judgment [ECF No. 17] in 15CV1046 and the insurers' "cross-motion" for summary judgment filed in 14CV1859. They both raise the same issue: whether an appraisal award should be vacated. The Court concludes that the award must be vacated, and accordingly, grants the motion in 14CV1859 and denies the motion in 15CV1046.

1

## FACTS

Colorado Hospitality Services, Inc., doing business as Peoria Hospitality, LLC ("Peoria") operates the Timbers Hotel located at 4411 Peoria Street in Denver, Colorado. Peoria claims that the hotel sustained damage in a hail storm on June 6, 2012. It submitted a claim to its property insurer, Owners Insurance Company, which in turn sent engaged Eberl Claims Service to inspect the premises. Eberl estimated the loss at $52,231.13. On June 10, 2013 Owners made an Actual Cash Value payment to Peoria of $23,777.53, reflecting depreciation of $23,453.60 and a $5,000 deductible.

Believing that the loss was much higher than Eberl's estimate, Peoria retained a public adjuster, Mike Lindhurst of C3 Group, Inc. to assist in adjusting the loss. Thereafter Lindhurst on behalf of Peoria submitted a claim in excess of $1.1 million.[1]

The insurance policy contains the following term:

**Appraisal**

If we and you disagree on the value of the property or the amount of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. . . . The appraisers will state separately the value of the property and the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

ECF No. 1-9 at 3 (Policy § E.2.).

---

[1] The Eberl and Lindhurst estimates were just two of several different opinions expressed about whether and to what extent the hotel had sustained a loss from a June 2012 hailstorm. *See* summary in Peoria's motion for partial summary judgment in 15CV1046, ECF No. 17 at 1–2.

Peoria invoked the appraisal process and selected Clark Lodge of Lodge Adjusting & Consulting as its appraiser. Owners selected Michael Fultz of PT&C Forensic Consulting Services, P.A. as its appraiser. The two appraisers selected Thomas Moorhead, a former state district judge and now a member of the Judicial Arbitration Group, to be the umpire. Mr. Lodge's appraisal was for $911,652.18 Actual Cash Value and $1,066.357.52 Replacement Cost. ECF No. 32-3 at 13–17. I am not aware of the result of Mr. Fultz's appraisal. In any event, Mr. Lodge and Judge Moorhead agreed to Mr. Lodge's numbers, i.e., an appraisal award of $911,652.18 Actual Cash Value ($1,066,357.52 Replacement Cost).

Owners then invoked its "right" to deny the claim, contending that there were no damaging hailstorms in the vicinity of the hotel during the two-year period of its policy. Peoria filed a motion for partial summary judgment, arguing that Owners had waived any contention that no hail damage occurred during the policy period when two adjusters sent to the hotel by Owners prepared estimates of hail damage, and that Owners should be required to honor the appraisal award which the policy indicated would be "binding." ECF No. 32.

Owners then filed a petition in state court to vacate the appraisal award, claiming among other things that the appraisal process was tainted by Peoria's designation of an appraiser who was not "impartial." Peoria removed that case to federal court where it became 15CV1046. Owners raised the same issue in its response to Peoria's motion for partial summary judgment in 14CV1859, attaching its Amended Petition from the state court filing as an exhibit. ECF No. 36-1. Peoria moved to consolidate the two cases, which I granted over Owners' opposition.

Owners' claim that Peoria's appraiser, Mr. Clark, was not impartial was based on two things that Owners represented that it had learned through pretrial discovery. First, Owners

3

claimed that there had been numerous "ex parte" email communications between Mr. Lodge and members of the C3 Group which was serving as Peoria's public adjuster. ECF No. 36-1 in 14CV1859 at 6, ¶24. Second, Owners had learned that Mr. Lodge was working for a fee of "$200/hr, with a cap at 5% of the replacement cost value of the final claims if an umpire is involved." *Id.* at 5, ¶22.

Owners moved to continue the trial, scheduled to begin on July 20, 2015, so that it could further explore the appraiser issue. In a hearing on June 23, 2015 I denied the motion to continue, denied Peoria's motion for partial summary judgment, noted my concerns about Mr. Clark's impartiality, and agreed to let the parties brief the issue. *See* ECF Nos. 52 and 53 in 14CV1859.

The appraiser issue has now been fully briefed on Peoria's motion for partial summary judgment in 15CV1046. ECF No. 17. Owners not only responded to that motion, ECF No. 20, but for good measure filed its own motion for summary judgment in 14CV1859. ECF No. 57. In addition to the so-called ex parte emails and the fee agreement, Owners cited deposition testimony of a Matt W. Behrens that Mr. Lodge had done about 100 or so appraisals for the C3 Group over the last couple of years. ECF No. 57-1 at 2 (deposition pages 30–31).

## CONCLUSIONS

The appraisal term in the Owners policy requires each party to select a "competent and impartial" appraiser. I need not reach or decide whether the exchanges of emails or the large number of appraisals that Mr. Lodge had performed for the C3 Group rendered him other than

impartial.[2] Mr. Lodge's fee schedule convinces me that he cannot be considered to have been an impartial appraiser in this instance.

One must remember that the "public adjuster" represents the insured, whose interest is in establishing a greater loss than that determined by the insurance adjuster. This case presents a dramatic illustration of the different loss estimates that can be generated by the insurance adjuster (initially just over $50,000) and the public adjuster (in the range of $900,000 to $1,000,000). Mr. Lodge's fee was capped at "5% of the replacement cost value of the final claims if an umpire is involved." Thus, the higher his appraisal, the higher the cap on his fee. If, for example, the replacement value of the loss were determined by the appraisal process to be $50,000, Mr. Lodge's fee would be capped at $2,500. But if the replacement value of the loss were set at $1,000,000, his fee would be capped at $50,000. An expert whose fee might be materially affected by the opinion he expresses cannot be considered to be "impartial" under any reasonable definition of that term.[3]

I realize, of course, that the cap applies only when an umpire is involved. Peoria argues that Mr. Lodge's appraisal was prepared before the umpire was selected and while he was still on an hourly fee. ECF No. 17 in 15CV1046 at 10–11. Even if that is so, I do not see how that

---

[2] The suggestion that retention of an expert on multiple engagements renders the expert other than impartial is a slippery slope. It could be, for example, that insurers also return to the same individuals for various kinds of "independent" opinions. It could also be that there is a limit to the number of qualified individuals who are able and willing to take on such engagements.

[3] Owners argues that the award should be vacated under the Colorado Uniform Arbitration Act, specifically C.R.S. § 13-22-223(b) (mandating vacation of an arbitration award if, among other causes, there was evident partiality by an arbitrator appointed as a neutral arbitrator). Peoria argues that the Act does not apply. I am inclined to agree with Owners. *See Tae Hyung Lim v. American Economy Ins. Co.,* No. 13-cv-2063-CMA-KLM, 2014 WL 1464400, at *4 (D. Colo. April 14, 2014). However, it makes no difference in this case. I would reach the same conclusion under the Act that I reach as a matter of contract interpretation. I see little meaningful difference between an "impartial" and a "neutral" appraiser, and in either case, the fee schedule introduces evident partiality.

eliminates the motive to reach a higher appraisal.  The possibility, if not the substantial probability, of an umpire's becoming involved is always there, and thus a motive to develop a high appraisal is built into the fee schedule.  I also realize that the umpire in this case, a highly respected former judge whose competence and impartiality I do not remotely question, signed off on an appraisal award that reflected Mr. Lodge's appraisal.  Nevertheless, the plain language of the contract requires that both sides select an "impartial" appraiser, and I hold as a matter of law that Peoria, through its public adjuster, did not do so.

Accordingly, the Court holds that the appraisal award was not conducted in accordance with the policy, and it vacates the award.  The case will proceed to trial for de novo determinations of coverage and the amount of any covered loss.  The fact that the appraisal process was invoked, and the result of that process, will not be admissible in evidence.  Counsel should advise their witnesses accordingly.  This does not preclude either party from presenting evidence of the various opinions that have been obtained regarding the amount of loss.

**ORDER**

1. Motion #57 in 14CV1859 is granted to the extent that the arbitration award is vacated.
2. Motion #32 in 15CV1406 is denied.

DATED this 14th day of July, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge