UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 2014-CV-01859-RBJ

---

Plaintiff(s):   **COLORADO HOSPITALITY SERVICES, INC., d/b/a PEORIA HOSPITALITY, LLC, a Colorado company**,

v.

Defendant(s):  **OWNERS INSURANCE COMPANY, an Ohio company.**

---

### DEFENDANT OWNERS INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S AMENDED MOTION FOR DETERMINATION OF ATTORNEY FEES

---

Defendant, Owners Insurance Company (hereinafter referred to as "Owners"), by and through its attorneys, Gregory R. Giometti & Associates, P.C., hereby submits its Response to Plaintiff's Amended Motion for Determination of Attorney Fees, stating as follows:

### I. INTRODUCTION

This case arises out of a hail damage claim submitted by Colorado Hospitality Services, Inc. d/b/a Peoria Hospitality, LLC ("Peoria") to its insurer, Owners. Peoria alleged that a hail storm on June 6, 2012 caused damage to its property, resulting in significant monetary expense in repairs. Owners contested the scope of Peoria's claim and retained various companies and individuals to evaluate the specifics of Peoria's claim.

Ultimately, the parties could not reach an agreement as to the amount of loss; therefore, Peoria invoked the appraisal provision of its insurance policy. Pursuant to the appraisal provision, the parties were contractually required to appoint "competent and impartial" appraisers. At the conclusion of the appraisal process, the Appraisal Award was issued in Peoria's favor, awarding $1,066,357.52 in replacement costs and $911,652.18 in actual cash

1

value.[1] After the Appraisal Award was issued, Owners learned that the appraisal contract between Peoria and Clark Lodge, Peoria's appraiser, showed that Mr. Lodge had a material interest in the outcome of the appraisal process by virtue of a contingent term in the appraisal contract. Ultimately, Owners filed a petition in state court to vacate the appraisal award, and Peoria removed the action to this Court.[2] Based upon the record of undisputed facts as they pertained to the appraisal issue, the Court granted summary judgment to Owners on its Petition to Vacate action, thereby vacating the Appraisal Award.

Thereafter, the parties went to trial on Peoria's claims against Owners, which involved claims for breach of contract, common law bad faith, and unreasonable delay under C.R.S. §§ 10-3-1115 & -1116. One of the salient issues underlying Peoria's claims against Owners was the extent, if any, of the hail damage to Peoria's property. During the trial, Peoria offered evidence and argued that the damage rose to the level reflected in the Appraisal Award, whereas Owners argued the contrary. Although the jury ultimately found for Peoria on its claims, the jury determined that the amount required to compensate Peoria for the hail damage was $70,871.70.[3] Considering Peoria's position in this litigation, this recovery is a small portion of the damages that it was claiming.

Following the jury trial, Peoria filed a request with the Court seeking Peoria's attorneys' fees and costs. Specifically, Peoria is asking for an award for attorneys' fees in the amount of $333,040.00 and an award for costs in the amount of $27,524.54.[4] For the reasons set forth in this Response, Peoria's request for attorneys' fees should be significantly reduced. Specifically,

---

[1] The Policy was not a replacement cost policy; therefore, the salient award was the amount attributable to the actual cash value of the hail damage claim.

[2] By order of the Court, Owners' Petition to Vacate action was consolidated with Peoria's action against Owners.

[3] This is the amount before subtracting the deductible and Owners' prior payment.

[4] Peoria's original motion for fees and costs was filed on August 10, 2015, Doc. #93, but it filed an amended motion for fees and costs on August 13, 2015. Doc. # 95. The figures noted in Owners' response are derived from Peoria's amended motion. Doc. # 95, p. 4. Peoria's request for costs is addressed separately.

the hours billed and the hourly rates of the attorneys and support staff are unreasonable; thus, Peoria's lodestar computation should be adjusted down and, moreover, the reduced lodestar amount should be further reduced pursuant to the considerations espoused in Colorado law.

## II. ARGUMENT

### A.      Standard for awarding attorney fees.

"An award of attorney fees must be reasonable. The determination of reasonableness is a question of fact for the trial court, and its ruling will not be disturbed on review unless patently erroneous and unsupported by the evidence." *Tallitsch v. Child Support Services, Inc.*, 926 P.2d 143, 147 (Colo. App. 1996) (citation omitted). "If a statute providing for a fee award does not provide a specific definition of 'reasonableness,' the amount of the award must be determined in light of all the circumstances, based upon the time and effort reasonably expended by the prevailing party's attorney." *Id.* (citation omitted).

Plaintiff's burden in an application for attorney's fees is to "prove and establish the reasonableness of each dollar, each hour, above zero." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (*quoting Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1210 (10th Cir. 1986)). "The initial estimate by the court of a reasonable attorney fee is reached by calculation of the 'lodestar' amount. This amount represents the number of hours reasonably expended multiplied by a reasonable hourly rate . . . ." *Tallitsch*, 926 P.2d at 147. The party seeking an award of attorney fees is required to submit evidence and documentation of both the amount of hours worked and the rates claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Where the evidence submitted in support of a request for attorney fees is inadequate, the award should be reduced accordingly. *Id.*

In cases in which a party is seeking attorney fees, counsel must keep meticulous, contemporaneous time records to present to the court upon request. *See also Robinson v. City of Edmond*, 160 F.3d 1275, 1285 (10th Cir. 1998) (noting that the 10th Circuit has "always <u>required</u> lawyers to keep 'meticulous time records . . .'") (emphasis added) (internal quotation omitted); *see also Case v. Unified School Dist.*, 157 F.3d 1243, 1250 (10th Cir. 1998).

Although the use of reconstructed time records is not expressly forbidden in all cases, "[p]ursuant to *Ramos,* it would not be an abuse of discretion for a district court to require contemporaneous time records, and often contemporaneous time records will be necessary in order for 'the fee applicant [to carry] . . . the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'" *Carter v. Sedgwick County, Kan.,* 929 F.2d 1501, 1506 (10th Cir. 1991) (*quoting Hensley*, 461 U.S. at 437). Where sloppy and imprecise time records fail to document adequately how counsel utilized large blocks of time, the district court should reduce the award accordingly. *Jane L.*, 61 F.3d at 1510. Colorado courts have been critical of block billing practices:

> Block billing is a form of timekeeping that involves stating the total daily time spent on a case, rather than separating out the time into individual entries describing specific activities. C.R.C.P. 121, section 1-22 does not require counsel to use a particular type of billing format; nor does it prohibit block billing. However, a trial court retains discretion to reduce the hours billed based on block billing if the court is unable to determine whether the amount of time spent on various tasks was reasonable.

*Payan v. Nash Finch Co.*, 310 P.3d 212, 218 (Colo. App. 2012) (internal citations omitted). In *Payan*, the trial court "found that block billing was a deviation from the standard practice in Colorado, and noted that across-the-board percentage cuts are routinely employed by courts to remedy such block billing," citing a California study on the issue of block billing. *Id.* (citation

omitted). The appellate court concluded that it saw "no reason to disagree with the trial court's conclusion." *Id.* at 220.

**B.    The lodestar amount asserted by Plaintiff is unreasonable in light of the facts of this case, the amounts charged by Plaintiff's attorneys, and the purported hours spent on this action.**

The analysis of an application for attorneys' fees begins with the calculation of the lodestar. "This amount represents the number of hours reasonably expended multiplied by a reasonable hourly rate and carries with it a strong presumption of reasonableness." *Tallitsch*, 926 P.2d at 147 (citation omitted). For several reasons, as set forth herein, Plaintiff's claimed lodestar amount is inflated and unreasonable.

 *1.    Any fees associated with Owners' Petition to Vacate action should not be awarded*

  a.    Owners' Petition action is not an action under C.R.S. §§ 10-3-1115 & -1116; therefore, Plaintiff cannot be awarded attorneys' fees for fees associated with Owners' Petition action.

As the Court's Amended Final Judgment noted, Plaintiff's request for attorneys' fees is predicated on prevailing upon its statutory claim under C.R.S. § 10-3-1116.[5] See Doc. # 92. It is from this statutory provision that the legal authority by which Plaintiff can claim an attorney fee award emanates; therefore, in order to be awarded attorneys' fees, Plaintiff must show that its attorney fees were related to work associated with the pursuit of Plaintiff's statutory claim.

Owners' Petition to Vacate action, conversely, does not arise under C.R.S. §§ 10-3-1115 & -1116. Rather, Owners sought vacatur of the Appraisal Award in this matter on two grounds: (1) a breach of contract theory, to wit, Plaintiff retained a partial appraiser thereby violating the appraisal provision of the insurance contract; and (2) an action under Colorado's Uniform

---

[5] Pursuant to C.R.S. § 10-3-1116, "[a] first-party claimant as defined in section 10-3-1115 whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit."

Arbitration Act, C.R.S. §§ 13-22-201, *et seq.* ("CUAA"). Under Colorado contract law, breach of contract actions do not, inherently, allow for the recovery of attorneys' fees.[6] The CUAA, however, does afford courts the discretion to award reasonable attorney fees to the prevailing party in an action seeking to confirm, vacate, or modify an arbitration award. *See* C.R.S. § 13-22-225(3) ("On the application of a prevailing party to a contested judicial proceeding under section 13-22-222, 13-22-223, or 13-22-224, the court may add reasonable attorney fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award.").

The question, for purposes of Plaintiff's present motion, is whether Owners' Petition to Vacate action would allow for the award of attorney fees. Since the Court determined that the Owners should prevail on its petition because Plaintiff breached the appraisal provision of the insurance contract, the prevailing theory was Owners' breach of contract theory. Generally, as noted above, Colorado contract law does not afford the prevailing party its attorney fees, unless there is a fee provision in the underlying contract. Here, Plaintiff's insurance policy did not contain a fee provision; therefore, Plaintiff has no recourse for seeking its attorneys' fees on Owners' Petition to Vacate action.

Assuming *arguendo* that the CUAA had been the controlling law upon which the Appraisal Award had been vacated, Plaintiff would be required to be the prevailing party in order to seek its attorneys' fees. Clearly, Owners, as well as Auto-Owners, was the prevailing party in

---

[6] Presumably, the exception to this general rule is when a breach of contract action involves a contract that contains an attorney fee provision. However, Owners' Petition to Vacate action stemmed from the insurance policy issued to Plaintiff, which did not contain an attorney fee provision. Had the insurance policy contained an attorney fee provision, Plaintiff would not be entitled to its attorneys' fees because Owners was the prevailing party. *See* Subsection II.B.1.b, *infra*.

the action concerning the Appraisal Award. *See* Subsection II.B.1.b., *infra*. Thus, if any party was entitled to seek its attorneys' fees under the CUAA, it would be Owners.

In sum, Plaintiff does not have legal authority to seek its attorneys' fees related to Owners' Petition to Vacate action. Therefore, any and all fees associated with work on the Petition to Vacate action should be stricken from Plaintiff's calculation and not awarded.

>    b.    Nevertheless, Owners and Auto-Owners Insurance Company were the prevailing parties on the Petition to Vacate action; thus, Plaintiff is not entitled to fees or costs.

Under Colorado law, "[a] 'prevailing party' is one who prevails on a significant issue in the litigation and derives some of the benefits sought by the litigation." *Archer v. Farmer Bros. Co.*, 90 P.3d 228, 230 (Colo. 2004) (citation omitted). "The number of claims upon which a party prevails or the amount awarded for those claims is not determinative." *Id.* (citation omitted).[7]

As noted above, the Court consolidated two separate, but related cases between the parties, to wit, Plaintiff's action against Owners and Owners' Petition to Vacate action. It should be beyond argument that Owners prevailed on its Petition to Vacate action. Specifically, Owners brought the Petition to Vacate action in an effort to vacate the Appraisal Award and submit Plaintiff's claim for property damage to the jury. For the reasons set forth in the Court's order on the cross-motions for summary judgment on the validity of the Appraisal Award, the Court granted Owners the relief it sought. Thus, by all measures, Owners was the prevailing party on the Petition to Vacate action. As a result, Plaintiff cannot and should not be awarded its attorneys' fees and costs associated with work done on Owners' Petition to Vacate action.

---

[7] The standard for determining the prevailing party in federal court appears similar to that implemented by Colorado courts. *See, e.g.*, *Thomas v. Sullivan*, 804 F.Supp. 1363, 1364 (D. Colo. 1992) (citations omitted) ("To determine whether the plaintiff was the prevailing party, [courts] evaluate the degree of success obtained. A prevailing party must establish actual entitlement to some relief in the merits of the underlying claim.").

       c.      Adjustments to the claimed, expended hours.

First, Plaintiff's claimed, expended hours should be reduced by the amount of time spent defending against Owners' Petition to Vacate. Based upon the review of Plaintiff's claimed hours, Owners has identified the following number of hours as associated with the Petition to Vacate action:

Childress Duffy, Ltd.

(1) Thomas Loucks – 8.5;
(2) Tiffany Skemp – 4.75;
(3) Ed Eshoo – 3;
(4) Michael Childress – 3.25; and
(5) Maria Ang – 7.75.

The Drake Law Firm, P.C.

(1) Marie Drake – 4.5;
(2) Angela Schmitz – 39.7; and
(3) Amanda Bauer – 8.6.

Taken together, based upon Owners' calculations, Plaintiff's legal representation asserts 80.05 hours related to work on the Petition to Vacate action. For the reasons cited herein, Plaintiff is not entitled to an award of attorneys' fees on the hours worked on the Petition to Vacate action. Therefore, 80.05 hours should be deducted from the lodestar calculus.

      2.     *Plaintiff's asserted hourly rates are unreasonable, particularly in light of the prevailing standards in the insurance litigation industry in Denver, Colorado.*

Generally, "[a] trial court should award attorney fees based on the prevailing market rate by private lawyers in the community." *Payan*, 310 P.3d at 221 (citations omitted). "The trial court is vested with broad discretion to determine whether the fees requested by a particular legal team are justified for the particular work performed and the results achieved in a particular case." *Id.* (citation omitted).

8

Owners retained the services of Franklin D. Patterson, who is a practicing attorney with significant experience in the insurance litigation field, to review Plaintiff's application for attorneys' fees. *See* Affidavit of Franklin D. Patterson, which is attached hereto as **Exhibit 1**. Among the concerns Mr. Patterson espouses, he indicates that the hourly rate being billed by Peoria's counsel is greater than the reasonable market rates. *See id.* In Mr. Patterson's opinion, a reasonable market rate for the Illinois counsel should be $300/hour for the five partners, $150/hour for the one associate, $100/hour for the experienced paralegals, $80/hour for the inexperienced paralegals, and $100/hour for the law clerks. *Id.*, **Attachment A**. With respect to Peoria's Colorado counsel, Mr. Patterson's opinion is that the reasonable rate for the attorneys would be $150-$200/hour and $80-$100/hour. *Id.*, **Attachment A**.

> 3. *A fair portion of the claimed hours worked represent duplicative work conducted by multiple attorneys, which is unreasonable and should be subtracted from the lodestar calculation.*[8]

      a.    Childress Duffy, Ltd.

As an initial matter, Childress Duffy employed an excessive amount of employee power in this case. For example, Childress Duffy lists fourteen separate individuals who worked on this matter. Doc. # 95-3. Among this list, Childress Duffy utilized five partners (billing at $500.00 per hour, each), an associate attorney, three members of the legal staff, and five law clerks. This line-up of professionals is further excessive in light of the provision of co-counsel provided by The Drake Law Firm, P.C., which involved two further attorneys and two further staff members. *See* Section II.B.3.b., *infra*.

      b.    The Drake Law Firm, P.C.

As noted above, The Drake Law Firm, P.C., employed several individuals in the pursuit of this action, in addition to the slate of professionals provided by Childress Duffy. Specifically,

---

[8] *See* **Exhibit 1**, **Attachment A**, pp. 3-4 for Mr. Patterson's opinions on the duplication of work.

The Drake Law Firm provided a partner, an associate, and two legal staff members in conjunction with the members of Childress Duffy, Ltd., in the pursuit of Peoria's case. *See* Doc. # 95-4.

> c.  The time sheets underlying Peoria's request for attorneys'
> fees shows duplicative work being conducted, all of which
> should not be reflected in the lodestar amount.

Several entries show that multiple attorneys performed the same actions on this suit; thus, much of the time reported by Peoria's counsel is duplicative. Most notably, several attorneys attended trial in this matter. At certain points, Peoria had four attorneys present at trial, and upon information and belief, three of the four attorneys were partners in their respective firms. At a minimum, Peoria had three attorneys at trial. Moreover, as another example, more than one attorney worked on drafting the complaint in this action. Owners submits that an award of attorneys' fees for duplicative work would be unreasonable.

> 4.  *Other issues present in Peoria's time sheets that should lead to a
> reduction in the "reasonable hours" expended by Peoria's counsel.*[9]

Peoria's documentation underlying its request for attorneys' fees reflects other issues that recommend a reduction in the hours purportedly worked. First, the entries reflected in The Drake Law Firm, P.C.'s time sheets related to the work conducted by Ms. Drake and Ms. Schmitz reflect only two entries for "0.1," both of which appear in Ms. Schmitz's time sheets, to wit, the shortest entry is "0.2"; therefore, the implication is that every action taken on in pursuit of Peoria's suit required a minimum of six-to-twelve minutes to accomplish. Similarly, the time sheets from Childress Duffy, Ltd., appear to contain entries in fourths of an hour, with the shortest entry being "0.25." This seems unreasonable as not all tasks should take a minimum of one-fourth an hour to complete. Second, Peoria's counsel's time sheets show several entries that

---

[9] *See* **Exhibit 1**, **Attachment A**, pp. 3-4 for Mr. Patterson's opinions on block billing.

constitute block billing. For example, Ms. Drake's time sheet lists, in four or so entries, "[t]rial preparation. Drive to courthouse. Meet with team, Bruce Rahmani, witnesses. Attend trial. Further trial preparation" culminating in 16 billable units worked, which Owners believes reflects 16 alleged hours of work. *See* Doc. # 95-4, pp. 23-24. As an initial matter, considering the length of a natural day coupled with the normal length of a trial day, 16 hours seems unreasonable. Nevertheless, the "block billing" in these entries renders it difficult, if not impossible, to assess the adequacy or extent of the hours purportedly worked, as there is not specific work with which to couple the time. Third, Peoria's counsel bills for their local travel time, which Owners submits is not a reasonable charge to assess a client and, therefore, it is not a reasonable charge to seek from Owners. Fourth, many entries on the time sheets are ambiguous and vague. For example, certain entries list "[t]elephone conference with team," *see* Doc # 95-4, p. 15; however, there is no indication what was discussed and how it related to the present matter. Peoria must establish its entitlement to attorneys' fees, and the nature of this sort of entry falls short of the threshold requirement and should not be included in the lodestar calculus.

In reviewing the supporting time sheets attached to Peoria's motion for attorneys' fees, Owners has highlighted the entries that it submits suffer from the aforementioned deficiencies for the Court's consideration. The highlighted time sheets from Childress Duffy, Ltd., have been attached hereto as **Exhibit 2**. The highlighted time sheets from The Drake Law Firm, P.C., have been attached hereto as **Exhibit 3**.[10] The review and inclusion of the highlighted time sheets is not intended as an explicit or implicit acquiescence or affirmation of the non-highlighted entries;

---

[10] Notably, the annotations in the attached exhibits denote the following: (1) yellow highlighting indicates entries that appear to relate to the Petition to Vacate action; (2) green marks indicate entries that appear to be duplicative work among Peoria's attorneys and supporting staff; and (3) red marks indicate entries that (a) take the form of block billing, (b) include charges for actions Owners submits are not compensable; and (c) entries that are vague and ambiguous.

rather, Owners challenges Peoria's overall award request in the manner outlined in this Response.

> 5.     *The "reasonable hours" asserted by Peoria should be reduced due to the lack of complexity and novelty in its action against Owners.*[11]

Under Colorado law, "[c]omplexity of the case has been recognized as a factor that may be considered in determining whether to adjust the lodestar amount." *Payan*, 310 P.3d at 220 (citations omitted); *see* Colo. R. Prof. Conduct 1.5(a)(1) ("The factors to be considered in determining the reasonableness of a fee include the following: the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly."). In *Payan*, the appellate court addressed when the complexity factor should be addressed and applied, to wit, whether this was a matter to be considered in calculating the lodestar amount or whether it should be used to downgrade the lodestar amount. *Id.* The court's analysis reviewed federal cases addressing this issue, noting that "[t]hese courts have held that making a downward adjustment based on lack of complexity of issues after determination of the lodestar amount undermines the policy behind fee-shifting provisions in private attorney general statutes." *Id.* (*citing Cooper v. Utah*, 894 F.2d 1169, 1173 (10th Cir. 1990). The *Payan* court found the reasoning of the federal decisions persuasive. *Id.* at 221. Specifically, the appellate court held:

> [T]aking a downward adjustment for lack of complexity in the "reasonable hours" portion of the initial lodestar calculation better serves the policy of encouraging counsel to act as private attorneys general in pursuit of meritorious claims with the prospect of limited damages.

*Id.* Although the appellate court suggests that the complexity factor should be weighed at the threshold of the lodestar calculation, it nevertheless left it within the trial court's discretion to

---

[11] *See* **Exhibit 1**, **Attachment A**, pp. 3 for Mr. Patterson's opinions on the excessive nature of the hours charged.

apply it in either context, stating, "On remand, the trial court has discretion whether to make the complexity reduction in either part of the calculation, but not in both." *Id.*

In either event, Peoria's award should be reduced on, *inter alia*, the basis that this case was not complex and did not involve novel issues. Peoria's claims against Owners were "run-of-the-mill" breach of contract, common law bad faith, and statutory, unreasonable delay claims, which is reflected in several aspects of Peoria's case. First, the parties agreed that no modifications were needed to the presumptive discovery limits in the Federal Rules. *See* Doc. # 18, pp. 9-10. Furthermore, at the scheduling conference and reflected in the scheduling order, Peoria anticipated providing expert discovery in three fields: (1) meteorology; (2) insurance industry standards and bad faith; and (3) roofing and/or engineering. *Id.* at p. 10. Peoria, ultimately, offered testimony in two of these areas: (1) insurance industry standards; and (2) roofing and/or engineering. As reflected in the scheduling order, Peoria initially intended to conduct three depositions: (1) a former adjuster for Owners, Michael Sankey; (2) an estimator from Eberl Claims Service, Robert Lawson; and (3) a designated 30(b)(6) witness from Owners. *Id.* at p. 11. Yet, Peoria did not depose a single individual in its action against Owners.

Peoria argues that this case became more complex as a result of the Court's decision to vacate the Appraisal Award, noting that "Counsel for [Peoria] has to adjust its strategy from trying a case where damages and causation had been established through appraisal to trying a case where all issues were in dispute; a much more complex case requiring different strategies and more witnesses." *See* Doc. # 95, p. 4. As an initial matter, Owners submits that any recourse to the Petition to Vacate action and its outcome should not have an effect on Peoria's present request for the reasons stated herein. *See* Section II.B.1, *supra*. In addition, damages and causation are frequently involved in cases in which one party alleges a breach of contract and

statutory unreasonable delay against another party. *See* CJI-CIV 25:2; 25:4; 25:6; 30:10; 30:37-30:41. In other words, in most cases of this sort, damages and causation are disputed issues that are frequently litigated. Moreover, the various iterations of Peoria's proposed witness lists do not reflect a sea-change in trial strategy. Prior to the Court's order vacating the Appraisal Award, Owners' counsel received a proposed witness list, by e-mail, from Peoria on June 24, 2015 that listed 15 potential witnesses. **Exhibit 4**. Following the Court's order vacating the Appraisal Award, Peoria filed a witness list on July 15, 2015 listing 13 potential witnesses. *See* Doc. # 64. A comparison of the two witness lists shows that 10 of the potential witnesses were the same. Nevertheless, Peoria called only five witnesses during its case-in-chief: (1) Michael Weiland, (2) Michael Lindhurst, (3) Clark Lodge, (4) Richard Laugesen, and (5) John Kregos. If the Appraisal Award had not been vacated, it is likely Mr. Weiland, Mr. Laugesen, and Mr. Lindhurst would have testified on the issues raised by Peoria's claims against Owners, particularly the common law bad faith claim and the statutory, unreasonable delay claim. Arguably, Mr. Lodge and Mr. Kregos may not have been called in the absence of the Court's order vacating the Appraisal Award; nevertheless, these two individuals were listed on Peoria's witness list prior to the Court's order.

In sum, Peoria's actions reflect that this case was a general, "run-of-the-mill" case involving allegations of breach of contract, common law bad faith, statutory, unreasonable delay. As a result, a deduction should be applied to Peoria's requested fee award, whether that deduction is applied to hours worked or to the lodestar amount.

**C.     The revised amount of the lodestar should be reduced due to the considerations under Colorado law, particularly those under C.R.P.C. 1.5.**

The calculation of the lodestar is not the final step in the attorneys' fees calculus. Rather, "[o]nce the lodestar amount is determined, that basic amount may be adjusted upward or

downward by application of [several] factors . . . , together with the degree of success achieved and those factors set forth in the Colorado Rule of Professional Conduct 1.5." *Tallitsch*, 926 P.2d at 147. The Rule 1.5 factors in determining the reasonableness of an attorney's fee are as follows:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;[12]
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

In addition to these considerations, "the trial court may consider . . . the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, and awards in similar cases." *Tallitsch*, 926 P.2d at 147 (citation omitted).

"In determining whether the lodestar figure should be adjusted up or down based on the degree of success achieved, the amount of damages recovered by the plaintiff is relevant." *Id.* at 148. "In addition, a court may consider the amount in controversy and the amount of damages sought." *Id.* (citations omitted).

---

[12] The *Payan* court suggests that the "novelty and difficulty of the questions involved" entry in Rule 1.5 reflects the complexity prong of the attorney fee analysis. *See Payan*, 310 P.3d at 220 (citations omitted). Thus, the "novelty and difficulty of the questions involved" factor arguably should apply to the calculation of reasonable hours expended. *See* Section II.B.5, *supra*.

Although Colorado courts have not adopted a *per se* rule of proportionality, courts have used the proportional consideration to reduce requested amounts for attorneys' fees. In *Tallitsch*, the jury returned a verdict against the defendants as a result of extreme and outrageous conduct and violation of the Colorado Organized Crime Control Act ("COCCA"). *Id.* at 146. The jury awarded the plaintiff $50 in compensatory damages and $50 in exemplary damages; yet, the plaintiff filed a motion requesting approximately $22,000 in attorney fees, as allowed for under COCCA. *Id.* Ultimately, the trial court awarded plaintiff $8,000 in attorney fees. *Id.* On appeal, the appellate court noted the following:

> In adjusting the lodestar amount downward, the trial court found that plaintiff had asked the jury to award substantial damages, certainly more than the $50 awarded. Further, the trial court found that, although the jury had determined that a violation of COCCA had occurred, such violation did not create a substantial detriment to the plaintiff. The trial court also evaluated the existence of the contingent fee agreement and considered the value of plaintiff acting as a "private attorney general" which benefitted the public by censuring defendant's inappropriate collection methods.

*Id.* at 148. The plaintiff argued that the trial court erroneously applied a "rule of proportionality"; however, according to the appellate review, the trial court rejected the proportionality approach. *Id.* Yet, "the trial court stated that the lack of a proportionality requirement did not preclude a review of the success achieved and results obtained when setting a reasonable fee," an analysis with which the appellate court agreed. *Id.* (citations omitted). Thus, the appellate court did not disturb the fee determination made by the trial court. *Id.*

In *Payan v. Nash Finch Co.*, 310 P.3d at 216, the plaintiffs brought, *inter alia*, a claim under Colorado's Consumer Protection Act. Ultimately, prior to trial, the defendant "filed an admission of liability and confession of judgment for the full amount of the statutory damages sought by [the] plaintiffs," which totaled $4,200. *Id.* Thereafter, the plaintiffs moved for attorney fees under C.R.S. § 6-1-113(2)(b), allowing for the recovery of fees and costs in pursuing

successful claims under the CCPA. *Payan*, 310 P.3d at 216. In their application, the plaintiffs requested $790,647 in fees, asking for a multiplier of 1.5 to 3 times, which brought their requested fees into the range of $1,185,970 to $2,371,941. *Id.* The defendant contested the reasonableness of the fee request, and the court, following a hearing, awarded the plaintiffs $88,427 in attorney fees. *Id.* Among other things, the plaintiffs argued on appeal that the trial court abused its discretion "by reducing the fee award based on the amount in controversy." *Id.* at 222. Similar to the trial court in *Tallitsch*, the trial court in *Payan* determined that the rule of proportionality could not be applied; however, the appellate court in *Payan* noted that the trial court did not "err in considering the amount in controversy in making a lodestar adjustment." *Payan*, 310 P.3d at 222.

To the best of the undersigned's recollection, Peoria, at trial, sought damages in one of two amounts: (1) $903,986.90, which is the actual cash value as determined by the C3 Group estimate; and (2) $900,545.77, which is the actual cash value as determined by Mr. Lodge; both of which would then be reduced by the $5,000 deductible and the prior payment of $23,777.53. Yet, the jury, after considering the evidence and hearing the relevant testimony, determined that the damage sustained by Peoria's property from the June 6, 2012 hail storm totaled $70,871.70. However, the actual recovery on Peoria's breach of contract claim was $42,094.17, which deducts the $5,000 deductible and the $23,777.53 prior payment. In other words, Peoria recovered approximately 4.8% of what it was claiming. Nevertheless, it has now requested attorney fees in the amount of $333,040.00. The requested fee amount is greatly disproportionate to the amount that Peoria ultimately recovered. In line with *Tallitsch* and *Payan*, Peoria's lodestar amount should be drastically reduced in order to bring the award amount more in line with Peoria's recovery.

**D.     Absent a significant reduction in the overall award of attorneys' fees, the outcome would encourage litigation in the future, as future attorneys would be enticed to bring claims in order to submit significant claims for attorneys' fees without regard to the recovery or potential for recovery.**

As noted above, Peoria's claim for attorneys' fees is predicated on the penalty aspect of C.R.S. § 10-3-1116(1), which allows for the recovery of "reasonable attorney fees and court costs and two times the covered benefit." In allowing for the award of attorneys' fees, the General Assembly qualified the award, allowing only for "reasonable" attorneys' fees. *Id.* Owners submits that it would be unreasonable to award fees in a manner outlined by Peoria because it would result in a windfall for Peoria's attorneys in light of the more modest damages award obtained by Peoria. At the moment, Peoria is requesting attorneys' fees in an amount that is approximately eight times the amount it recovered on its breach of contract claim. It could not have been the General Assembly's intent to enact a cause of action that would lead to such a result.

Moreover, in consideration of the of disparity between damages and requested attorneys' fees, awarding Peoria the entire amount, or a substantially similar amount, that it has requested would engender increased litigation, as attorneys would be incentivized to bring claims without regard to the level of success that may be obtained. Owners submits that this outcome could not have been the consequence that was intended by the General Assembly when it enacted C.R.S. § 10-3-1116.

### III. CONCLUSION

Under Colorado law, the framework in which an award of attorneys' fees is calculated begins with the calculation of the lodestar amount, which is reached by multiplying a reasonable rate with the number of hours worked. Peoria's asserted lodestar amount is unreasonable and excessive for the reasons set forth herein. First, Owners requests the Court to reduce the

reasonable rates asserted by Peoria, as many of them are higher than the regular rate charged by similarly-situated attorneys in Denver, Colorado. Second, Owners requests that the Court reduce the number of hours purported to have been logged by Peoria's attorneys for several reasons, including:

> (1) Much of the work was duplicative, to wit, Peoria had multiple attorneys, including multiple partners, and staff working on the same materials;

> (2) During trial, Peoria had at a minimum of two attorneys, with a third or fourth occasionally appearing on Peoria's behalf, which Owners submits is unreasonable and excessive;

> (3) Peoria seeks attorneys' fees for work associated with Owners' Petition to Vacate action, upon which Peoria was not the prevailing party and is not entitled to attorneys' fees;

> (4) Several of the entries provided by Peoria's attorneys constitute block billing, from which the manner and extent of work cannot be derived. Since Peoria bears the burden of establishing the elements needed to receive an award of attorneys' fees, its lodestar calculation should withhold those sums arising from block billing and attributable to ambiguous and vague entries; and

> (5) This case was neither complex nor presented novel questions of law, therefore, the hours expended by Peoria's attorneys should be further reduced to a level commensurate with a "run-of-the-mill" breach of contract and bad faith lawsuit.

Thus, Peoria's lodestar should be recalculated with the reduced rates and the reduced hours worked on this matter.

In addition, the revised lodestar amount should be reduced as a result of the additional factors in Colorado law. Primarily, Owners submits that the lodestar amount should be commensurate or proportional with the recovery of the client, to wit, the award of attorneys' fees should not dwarf the damages award provided by the jury. In leveling the award of attorneys' fees with the outcome of the trial, the Court satisfies the fee considerations under Colorado law and ensures that the policy implications of an unreasonable and inflated attorneys' fees award are averted.

For the foregoing reasons, Owners requests the Court to reduce significantly the attorneys' fees computation asserted by Peoria. Owners submits that a reasonable award of fees would be between 5% and 10% of the lodestar amount determined by the Court.

WHEREFORE Owners respectfully requests the Court deny Plaintiff's Amended Motion; award fees in a manner outlined herein; and afford any further relief the Court deems just under the circumstances.

Respectfully submitted this 31st day of August, 2015,

**GREGORY R. GIOMETTI & ASSOC., P.C.**

*Original Signature on File*
*s/ Gregory Giometti*
Gregory R. Giometti, #16868
Mark E. Honhart, #26102
Joseph M. Cox, #45215
Gregory R. Giometti & Associates, P.C.
50 S. Steele Street, Suite 480
Denver, CO 80209
Phone:          (303) 333-1957
Fax:             (303) 377-3460
E-mail:          ggiometti@giomettilaw.com
                    mhonhart@giomettilaw.com
                    jcox@giomettilaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of August, 2015, a true and correct copy of the foregoing **DEFENDANT OWNERS INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S AMENDED MOTION FOR DETERMINATION OF ATTORNEY FEES** was filed and served electronically via CM/ECF to the following:

Marie E. Drake, Esq.
Angela M. Schmitz, Esq.
THE DRAKE LAW FIRM, P.C.
1600 Jackson Street, Suite 340
Golden, CO  80401

Michael W. Duffy
Thomas J. Loucks
Andrew M. Plunkett
Childress Duffy, Ltd
500 N. Dearborn Street, Suite 1200
Chicago, IL 60654

*Original signature on file*
*s/ Sandra K. Ruszkowski*
Sandra K. Ruszkowski