IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-001859-RBJ

COLORADO HOSPITALITY SERVICES INC.,
a Colorado company d/b/a Peoria Hospitality, LLC,

      Plaintiff,

v.

OWNERS INSURANCE COMPANY, an Ohio company,

      Defendant.

**Consolidated with**,

Civil Action No. 15-cv-01046-RBJ

OWNERS INSURANCE COMPANY and
AUTO OWNERS INSURANCE COMPANY,

      Petitioners,

v.

COLORADO HOSPITALITY SERVICES, INC.,

      Respondent.

---

## ORDER

---

Plaintiff moves for an award of attorney's fees in the amount of $333,040.00 and costs in the amount of $27,524.54.  Defendant responds that the amount is excessive, although defendant does not propose a specific number that it would regard as reasonable.  The Court held an evidentiary hearing on December 29, 2015.  For the reasons discussed in this order, the Court awards $154,847.50 in attorney's fees and $19,828.55 in costs.

1

## BACKGROUND

This is an insurance coverage case.  The plaintiff, Colorado Hospitality Services, Inc., doing business as Peoria Hospitality, LLC ("Peoria"), operates a hotel in Denver.  After sustaining damage in a hail storm on June 6, 2012, Peoria submitted a claim to its property insurer, Owners Insurance Company.  An adjustment service engaged by Owners estimated the loss at $52,231.13.  On June 10, 2013 Owners made an Actual Cash Value payment to Peoria of $23,777.53, reflecting depreciation of $23,453.60 and a $5,000 deductible.

Peoria was not satisfied with Owners' payment, and it retained a "public adjuster" to assist in adjusting the loss.  The insurance policy provided that if the parties disagreed on the value of the property or the amount of the loss, either of them could demand an appraisal whereunder each party would select a "competent and impartial appraiser" to determine separately the amount of the loss.  If they then disagreed, their differences would be submitted to an umpire, and a decision of any two of the three, presumably the umpire and one of the appraisers, would be binding.

The parties disagreed, and the appraisal procedure was invoked.  The individual selected by the public adjuster to serve as the plaintiff's appraiser determined that the loss was $911,652.18 (actual cash value) or $1,066.357.52 (replacement cost).  The appraiser selected by Owners determined a number unknown to this Court but represented to be a small fraction of the plaintiff's appraisal.  The umpire agreed with the plaintiff's numbers.

Unfortunately for the plaintiff, however, the Court determined that the individual selected by the public adjuster was not an impartial appraiser.  In an order issued July 14, 2015 the Court vacated the appraisal award.  ECF No 59.  Therefore, the parties were left to resolve their dispute

the old fashioned way—by jury trial.  At the conclusion of the trial, which was held July 20-23 and 27, 2015 the jury found that the actual cash value of the damage caused by the hailstorm was $70,871.70.  The jury also found that Owners delayed or denied payment of the full benefit provided by the policy without a reasonable basis.  Verdict, ECF No. 87.

The Court entered judgment for the plaintiff on its breach of contract claim for $42,094.17 – the amount by which the insurance benefit as determined by the jury exceeded the amount previously paid by Owners.  ECF No. 92.  In addition, because of the jury's determination that Owners had unreasonably delayed or denied payment of the full benefit, the Court entered judgment for a penalty of two times the unpaid portion of the benefit ($84,188.34), pursuant to C.R.S. §§ 10-3-1115 and -1116.  *Id.*  The Amended Final Judgment also provides that, pursuant to C.R.S. § 10-3-1116(1), plaintiff is entitled to an award of its reasonable court costs and attorney's fees.  *Id.*  The parties now dispute the amounts of the costs and fees to which plaintiff is entitled.

## FINDINGS AND CONCLUSIONS

### A.  <u>Attorney's Fees</u>.

The determination of a reasonable attorney's fee begins with calculation of the "lodestar amount," i.e., the product of hours "reasonably expended" times a "reasonable hourly rate." *Robinson v. City of Edmund,* 160 F.3d 1275, 1281 (10th Cir. 1998).  Plaintiff was represented by two law firms.  One of these firms, Childress Duffy, Ltd of Chicago, Illinois, billed $207,800 for its time, representing 592.5 hours at various hourly rates.  Affidavit of Thomas J. Loucks, ECF No 95-3 at 2.  The other firm, The Drake Firm, P.C. of Denver, Colorado, billed $125,440.00, representing 389.7 hours at various hourly rates.  Affidavit of Marie E. Drake, ECF No. 95-4, at

3

2.  Collectively, the product of hours billed times rates used is $333,240, which was the amount sought by the plaintiff in its motion.

However, the Court must determine whether the hours and rates were reasonable, sometimes referred to as the adjusted lodestar.  In assessing reasonableness courts often consider the 12 guidelines originally listed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974).[1]  This Court also considers Rule 1.5 of the Colorado Rules of Professional Conduct, which lists eight non-exclusive factors that should be considered in determining the reasonableness of a fee.[2]  There is substantial overlap between the two sets of factors, and some of the factors are not applicable to the present dispute.

### 1.  Reasonable Hours.

I find that the factors most relevant to the determination of the reasonable number of hours in this case are (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the amount involved and result obtained; and (4) whether the fee was fixed or contingent.

A party seeking an award of attorney's fees has a responsibility to "exercise billing judgment with respect to the number of hours worked and billed."  *Praseuth v. Rubbermaid, Inc.,*

---

[1] The *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the services; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship; and (12) awards in similar cases.  *Id.*

[2] These factors are (1) the time and labor required, the novelty and difficulty of the issues, and the skill required to perform the services; (2) the likelihood that acceptance of the engagement would preclude other employment; (3) the fee customarily charged in the locality for similar services; (4) the amount involved and results obtained; (5) the time limitations imposed by the client; (6) the nature and length of the professional relationship; (7) the experience, reputation and ability of the lawyers performing the services; and (8) whether the fee was fixed or contingent.

406 F. 3d 1245, 1257 (10th Cir. 2005). Even so, the district court "is not obligated to accept the

fee applicant's billing judgment uncritically." *Id.* However, the court may not simply "eyeball

the fee request and cut it down by an arbitrary percentage." *Robinson,* 160 F.3d at 1281 (quoting

*People Who Care v. Rockford Bd. of Educ., Sch. Dist. No 205,* 90 F.3d 1307, 1314 (7th Cir.

1996)).

Plaintiff's counsel initially presented the time as recorded without further review or

evaluation. But shortly before the hearing they retained an "expert," Richard M. Crane, the

current co-chairman of the Insurance Bad Faith Committee of the Colorado Trial Lawyers

Association. He has 25 years of experience representing plaintiffs in personal injury cases,

including numerous insurance coverage cases in which he has contended that insurers

unreasonably delayed or denied claims contrary to C.R.S. §§ 10-3-1115 and -1116. Mr. Crane

reviewed plaintiff's fee application, although he did not study the individual time entries. In his

opinion, the number of hours recorded by plaintiff's counsel should be reduced by 25 to 30

percent based on his impression that the time entries contain some duplication, that the hourly

rates used are "slightly high," and that the fees requested are somewhat disproportionate to the

result obtained. He therefore would reduce the hours from 982.2 to a range of between 687 and

736 hours, mathematically producing a suggested lodestar of between $233,000 and $250,000.

During the hearing plaintiff's counsel indicated that they would abide the opinion of their

retained expert, and they modified their fee request accordingly.

The defendant retained its own "expert," Franklin D. Patterson. He has approximately 23

years of experience as an insurance defense lawyer, including insurance bad faith. He estimates

that these days approximately 60 to 70 percent of his cases involve claims under C.R.S. §§ 10-3-

1115 and -1116.  Mr. Patterson is critical of plaintiff counsel's time records, noting among other things that the large number of timekeepers inevitably produces duplication of effort, and that the practice of recording time in large blocks under vague descriptions makes line by line evaluation difficult.  Based on his own cases, he estimates that defense of insurance bad faith cases through trial requires between 400 and 700 hours.  He believes that the number of hours required to prosecute these cases should be relatively similar; while the plaintiff carries a heavier load initially, Mr. Patterson believes that the effort tends to even out over the course of a case.  He considers this to have been a relatively non-contentious case, including limited discovery and no depositions.  The "excitement," meaning the motion to vacate the appraisal award, came shortly before trial when trial preparation was occurring anyway.  Mr. Patterson's opinion is that this case should have taken about 500 to 550 hours to prosecute.  He also believes that the ratio of attorney time should have been 80 to 85 percent of the bill in relation to paralegal time.  When coupled with his opinions regarding hourly rates, discussed below, Mr. Patterson suggests a lodestar in the range of $143,000 to $148,000.

These expert opinions are somewhat helpful.  At a minimum, it is significant that the experts on both sides believe that plaintiff's unadjusted "lodestar" was unreasonably high.  However, to some extent the experts – particularly on the plaintiff's side – have done what district courts may not do, that is, to eyeball the fee request and reduce it by an arbitrary percentage.  With that in mind, I turn to my own evaluation of the evidence.

To begin, it is significant that the plaintiff's lawyers undertook the representation on a contingent fee pursuant to a contingent fee agreement.  There was no discussion of the fee agreement or its terms in the parties' pleadings.  A copy was not produced at the fee hearing.

Neither of the plaintiff's attorneys who were present, Michael Duffy and Marie Drake, was aware of the terms, if any, concerning how to treat court-awarded fees. It is entirely appropriate for plaintiffs to be represented on a contingent fee basis. But the reality is that when a lawyer is not billing his time to the client, there is no client review or brake on the hours recorded or the rates used. In my judgment, the fact that the plaintiff was represented on a contingency fee basis significantly impacted the hours recorded in this case.

I agree with Mr. Patterson that the present case, with the exception of the vacation of the arbitration award, was neither unusual nor particularly complex. Its core was a routine breach of insurance contract case. Plaintiff counsel's records show that the "team" of individuals billing time on this case included six partner-level lawyers (five from the Chicago firm, one from the Denver firm), two associate attorneys (one from each firm), five paralegals (three Chicago, two Denver), and five law clerks (Chicago). The case does not warrant an army. Although delegation of work to lower rate personnel can sometimes reduce cost, the size of the team inevitably resulted in duplication of effort in briefing and rebriefing all these people, reviewing work generated, attending meetings, etc. Simply put, it is not an efficient way to team a relatively routine insurance bad faith case.

The Chicago firm was represented at trial by partners Duffy (lead trial lawyer) and Loucks (jury instructions, general assistance). It is evident from the time records that paralegal Tiffany Skemp and law clerk Marie Ang had significant roles in the case. I find that it is appropriate to eliminate the time of all the other Chicago timekeepers who recorded time to the case: partners Eshoo, Plunkett and Childress; associate Owen; paralegals Wedgewood and Reach; and law clerks Byczek, Loucks, Maienza and Kerper. *See* ECF No. 95-3 at 2. This is not

to say that the time eliminated necessarily was useless. For example, Chicago associate John M. Owen recorded only 15.5 hours to this account, but the records show that this included drafting the Complaint, obviously a necessary task. Rather, it is to say that work necessarily done could and should have been done by a smaller group of timekeepers. Similarly, I have eliminated the time of paralegal Hendricks in the Denver firm. *See* ECF No. 95-4.

This still leaves a relatively routine case teamed by three partners, one associate, two paralegals and one law clerk –heavy staffing in my view. But the client initially selected Chicago counsel (Mr. Loucks), and the Chicago lawyers determined that it was necessary and reasonable to team with local counsel. It is reasonable to respect these choices. [3]

Next, I have reviewed the time entries of the remaining timekeepers, bearing in mind that the practice of Mr. Duffy, as he described it, and perhaps the other Chicago lawyers was to make daily notes about the work done and then to summarize the notes weekly. That approach – as opposed to contemporaneously recording time – is not calculated to produce accurate records.

I have reduced hours when the time recorded was in large blocks of round numbers with vague descriptions of the work done. Lead counsel Duffy, for example, has a habit of doing this. By my count he recorded approximately 100 hours with descriptions little if any more detailed than "trial preparation." That number by itself is not concerning. I do not wish to understate the importance of preparation or the long hours that it requires, nor do I disregard Mr. Duffy's testimony that it is and always has been his practice to spend very long hours preparing and

---

[3] Three lawyers entered appearances for the defendant in the case. They appeared in various combinations of two at pretrial conferences. Two participated in the trial. Defense counsel presumably had some type of paralegal or law clerk support. Therefore, it would have been interesting and helpful to know the number of hours billed by the participants in the defense team. However, the defendant or defense counsel apparently did not wish to share that information or to facilitate that comparison. Neither the Court nor the defense expert, Mr. Patterson, was provided that information, despite the Court's noting during the hearing that it would like to have it.

trying cases.  But "a district court should approach this reasonableness inquiry 'much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients.'"  *Robinson,* 160 F. 3d at 1281 (quoting *Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir. 1983)).  In my judgment, several of Mr. Duffy's time entries and those of his colleagues do not pass the *Ramos* test.

For example, Mr. Duffy's "trial preparation" entries included two 15.0 hour days, two 9.0 hour days, and numerous others.  He recorded three 18.0 hour days and one 15.0 hour day during trial.  Mr. Loucks, whose role according to Mr. Duffy was to be the client contact and to assist with trial preparation, oversight of research and motion practice, provide advice to Mr. Duffy during trial, and work with Denver counsel on jury instructions, recorded his time during trial in blocks of 13.0, 14.0, 12.0 and 11.0 hours.  Paralegal Tiffany Skemp recorded time during trial in blocks of 10.0, 13.0, 12.0 and 11.0 hours (and 10.0 hours on the day after trial).  *See* ECF No. 95-3 at 5-7.

The time entries for the Drake firm are more detailed.  But during the trial Ms. Drake recorded her time in blocks of 16.0 hours (three days) and 10.0 hours (one time).  She described the time as "trial preparation, drive to courthouse, meet with team, Bruce Rahmani, witnesses, attend trial, further trial preparation" (the 16.0 hour days) and simply "attend trial, review email" (the 10.0 hour day).  ECF No. 95-4 at 23-24.  Her role, according to Mr. Duffy, was working with Mr. Loucks on jury instructions, keeping a record of exhibits, overseeing paralegals' work on exhibits, general assistance with witness preparation, presenting one witness (Rahmani), and taking copious notes.  I mean no disrespect to Ms. Blake, whom I recognize to be an experienced and entirely professional practitioner.  But, particularly during trial, she essentially sat in on the

trial and team meetings and largely performed roles that were or could have been performed by

Mr. Loucks and the paralegals.

To some extent Owners has itself to blame.  Its unreasonable delay and denial of the

benefit to which plaintiff was entitled under the insurance policy was one factor that unleashed

the plaintiff's team.  Because of that I decline to flyspeck the fee application with too sharp a

pencil.  But the fees transferred to Owners must be reasonable.  Setting aside the appraisal issue,

which I will deal with separately, I recalculated the hours of the six timekeepers as follows:

|  |  |
|---|---|
| Michael Duffy: | 160 hours |
| Thomas Loucks | 70 hours |
| Tiffany Skemp | 110 hours |
| Marie Drake | 125 hours |
| Angela Schmitz | 173 hours |
| Amanda Bauer | 37 hours |

I then further adjust for hours spent defending against Owners' motion to vacate the

appraisal award.  This is not simply because Owners prevailed on the issue.  I agree with Mr.

Crane that it would be inappropriate to go through a case issue by issue and attempt to cull out

any time spent on an issue on which the plaintiff did not ultimately prevail.  In any case you "win

some and lose some."  In this instance, however, plaintiff was defending an appraisal that was

contaminated from its outset, as I have discussed in my order vacating the appraisal award.  ECF

No. 59.  Had plaintiff's counsel recognized the problem with the result engineered by the public

adjuster and a biased "appraiser," and exercised good judgment, they would have rejected the

result without the necessity of a defense motion and ultimately a court decision.  The appraisal

process is supposed to resolve these disputes, and in this instance it substantially expanded the case.

Defense counsel attempted to isolate the hours plaintiffs spent on defending the motion to vacate. *See* ECF No. 98 at 8. Plaintiff's counsel has not disputed the numbers, and I accept them. After deducting the time thus attributed to defending the motion to vacate, I find the following hours were reasonably recorded and should be included in the adjusted lodestar:

| | |
|---|---|
| Michael Duffy: | 160 hours |
| Thomas Loucks | 61.5 hours |
| Tiffany Skemp | 105.25 hours |
| Marie Drake | 120.5 hours |
| Angela Schmitz | 133.3 hours |
| Amanda Bauer | 28.4 hours |

### 2. **Reasonable Hourly Rates.**

The factors most relevant to determine reasonable hourly rates for the work done in this case are (1) the skill required to perform the services; (2) the fee customarily charged in this community for similar services; and (3) the experience, reputation and ability of the attorneys (and others) involved.

Plaintiff initially provided essentially no evidence that counsel's claimed rates are customary or reasonable in this community other than counsel's own ipse dixit. Plaintiff cited *Etherton v. Owners Insurance Company,* 82 F.Supp. 3d 1190 (D. Colo. 2015). Like the present case, this was an insurance coverage case wherein the jury found against Owners on claims of breach of contract and unreasonable delay or denial of benefits. Plaintiff's lead counsel in

*Etherton*, who had 22 years' experience, billed his time at $300 per hour.  A second lawyer on the case, with eight years' experience, was billed at $200 per hour.  Two other lawyers, apparently "senior associates," were also billed at $200 per hour.  Judge Brimmer found those rates to be "reasonable, given the experience of the attorneys, the nature of the case, and the prevailing market rates in the local market."  *Id.* at 1200.  That does not support plaintiff's rate schedule, but Judge Brimmer did cite two cases where higher fees were awarded.  In *Hitchens v. Thompson National Properties, LLC,* No. 12-cv-2367-LTB-BNB, 2014 WL 2218094 (D. Colo. May 29, 2014) Judge Babcock found that rates of $250 per hour (eight years' experience litigating insurance subrogation and contract disputes), $430 per hour (30 years' experience), $405 per hour (20 to 25 years' experience) and $110 per hour (paralegals with undisclosed experience) were reasonable.  *Id.* at *2-3.  In *Scott v. City and County of Denver,* No. 12-cv-53-MSK-BNB, 2014 WL 287558 (D. Colo. Jan. 24, 2014), Chief Judge Krieger found that rates of $440 per hour (20 years' experience) and $290 (eight years' experience) were "at the very outer edge of what might be considered 'reasonable' in the Denver market."  *Id.* at *2.

Plaintiff's expert Mr. Crane described the Denver law firm Roberts, Levin and Rosenberg (presently Levin and Rosenberg) as the leading plaintiff's insurance bad faith firm in Colorado.  Thomas Roberts, now formerly of that firm, was instrumental in creating insurance bad faith law in this State.  According to Mr. Crane, Mr. Roberts charges $450 per hour for his time.  Based on that standard, Mr. Crane believes the rates used by plaintiff's counsel in the present case were "slightly high."  However, he did not make a specific adjustment based on rates.  As indicated above, his opinion on the rates factored into his overall opinion that the fee requested by plaintiff's counsel should be reduced by 25 to 30 percent.

Defendant's expert Mr. Patterson noted that plaintiff's lawyers in similar cases nearly always work on a contingent fee basis, as was the case here.  However, he has defended cases where the successful plaintiff applied for an award of attorney's fees, and he has served as an expert on attorney's fees in other cases.  He agrees that Mr. Roberts and his colleagues are among the most highly regarded plaintiff's lawyers in the field, although he believes that the rates charged by the top lawyers are in the $300 to $350 range.  In any event, his opinion is that reasonable hourly rates in the present case would be $300 for the Chicago partner-level attorneys; $150 for the Chicago associate attorney, Mr. Owen; $200 for Ms. Drake; $150 for her associate attorney Ms. Schmitz; and $80-$100 for paralegals or other assistants in both firms, depending upon their experience.

I have considered the skill and experience required for the roles played by each timekeeper; experience; the observed performance of some of the timekeepers; the testimony of Mr. Crane and Mr. Patterson; the cases cited in this order; and my own experience as a trial lawyer and trial judge.  I find that the following rates are reasonable for the six timekeepers whose hours have been included in the adjusted lodestar:

Michael Duffy: $400 per hour.  He has substantial experience in representing both insurance companies and plaintiffs suing insurance companies.  He was lead trial counsel in this case.  Generally during the pretrial conferences and trial his work reflected that of a specialist who is competent and experienced in this area of practice.  However, he does his work on contingent fees.  He has a rate, $500 an hour, but it is not a rate that is billed to clients.  It is above the rate ($450) attributed by Mr. Crane to the best and most experienced plaintiff's insurance coverage and bad faith lawyers in Colorado.  It is substantially above the rate

attributed by Mr. Patterson to those same lawyers ($300-$350).  He does not have a CV that

matches, for example, that of Mr. Roberts whom both sides have recognized to be the, or at least

one of, the premier local practitioners in this field.

Thomas Loucks: $325 per hour.  He too is an experienced plaintiff's lawyer, and his time

was billed at $500 per hour.  However, the role he played in this case was largely akin to a more

junior partner or even a senior associate.  I do not doubt that his years of practice brought greater

wisdom and experience than a junior partner or senior associate might have.  But he did not

handle any part of the trial.  He worked with Ms. Drake on jury instructions, consulted as he

deemed appropriate, was present as the client contact, and generally had a secondary role

throughout the case.

Tiffany Skemp: $100 per hour.  Ms. Skemp has been a paralegal since 2012.  The only

evidence in the record as to what is customary for paralegals in this community was Mr.

Patterson's opinion that the rate is generally in the $75 to $125 per hour range (a small increase

from his report).  The Chicago firm "billed" its paralegals at $150 per hour as did the Denver

firm, but again, these are not rates that have been charged to or paid by clients.  Based on Ms.

Skemp's limited experience, I find that $150 per hour is high, but $100 per hour is reasonable.

Marie Drake: $250 per hour.  Ms. Drake has 16 years of civil litigation experience.

However, this was primarily in such areas as creditors' rights, collections, bankruptcy, and

family law.  In the last year and a half or so she has she become involved in representing

insureds in coverage cases.  My impression is that much of that experience has been in a local

counsel role similar to the role she played in the present case.  This was her first insurance

coverage trial.  Her role was similar to that of Mr. Loucks in some respects and akin to a junior

associate or paralegal in other respects (charting exhibits, taking detailed notes).  While I do not

question her general litigation ability, I find that a smaller rate is appropriate for the work she did

in this case.

Angela Schmitz: $200 per hour.  Although she is characterized as an associate attorney,

she got her law degree in 2003, clerked for an appellate judge, and at least during the last three

years has been working in civil litigation.  The fee application lists her rate as $300 per hour,

which Ms. Drake explained was based on her review of case law and discussions with other

lawyers, not on billing a paying client.  That is high, but my sense is that she played an important

role on the legal issues in the case.

Amanda Bauer: $125 per hour.  Ms. Bauer has been a paralegal since 2007, so she has

five years more experience than Ms. Skemp.  She was "billed" at $150 per hour, but I have

placed her at the high end of Mr. Patterson's range, which again is the only evidence I have other

than the plaintiff's fee application.

### 3. <u>Adjusted Lodestar</u>

Multiplying the reasonable hours by the reasonable hourly rates, as I have found them to

be, the adjusted lodestar is $154,847.50.[4]  As it turned out, this is a little higher than the range

suggested by the defendant's expert ($143,000 to $148,000) but lower than the range suggested

by the plaintiff's expert ($233,000 to $250,000).  Their opinions at least reinforce my belief that

the adjusted lodestar is within a reasonable ballpark.

Two additional comments.  First, although the result obtained is a factor in determining a

reasonable fee, the fact that the adjusted lodestar is more than the jury verdict does not trouble

---

[4] This number would have been $13,337.50 higher had I not deducted the time related to the defense
against the motion to vacate the appraisal award.

me in this instance.  Sometimes fees exceeding the recovery are justified.  *See, e.g., Bagher v. Auto-Owners Insurance Company,* No. 12-cv-980-REB-KLM, 2015 WL 1475104, at *3 (D. Colo. March 27, 2015) (damages, including statutory doubling, $260,000; adjusted lodestar $292,018.50).  This case accomplished an important remedial purpose, i.e., to remind this insurer and others that there can be a significant consequence when an insurance benefit is unreasonably delayed or denied.

Second, in its opposition brief Owners asked the Court to award only five to 10 percent of whatever the Court calculated to be the adjusted lodestar.  ECF No. 98 at 20.  Owners endorsed Mr. Patterson's expert opinion, which would translate on Owners' theory to an attorney fee award in the range of approximately $7,000 to $15,000.  Using the adjusted lodestar as I have calculated it, Owners would seemingly have me reduce the final award to something in the $8,000 to $16,000 range.  If so, then I would only say that Owners still does not get it.  I reject its proposal out of hand.

**B.  Costs.**

Plaintiff seeks an award of costs in the amount of $27,230.44, itemized at ECF No. 95-6. Owners responds that because the applicable state statute, C.R.S. 10-3-1116, only provides for "court costs," not "actual costs" or "general litigation costs," the award should be limited to the costs a federal court clerk may award under 28 U.S.C. § 1920.  Owners provides no authority for that interpretation, and it makes no sense.  This is a remedial statute, and there is nothing in it that remotely suggests that a court should award less than all costs reasonably incurred, much less than that a court, federal or state, should apply a standard applicable to costs taxed by federal court clerks in other types of cases.

16

Owners is on firmer ground when it criticizes the conclusory nature of plaintiff's itemization of costs. "A party seeking costs must provide the court with sufficient information and supporting documentation to allow a judge to make a reasoned decision for each cost item presented." *Brody v. Hellman,* 167 p.3D 192, 206 (Colo. App. 2007). However, plaintiff's exhibit, ECF No. 95-6, provides little information (and no documentation) supporting the reasonableness of the items listed. Plaintiff was unable to supplement the costs summary during the hearing. The expert, Mr. Crane, was not asked to look at the costs. Mr. Duffy did not prepare the summary and could not comment in any detail on it.

I do not have reason to dispute that the costs listed in the exhibit were in fact incurred. However, I can only award costs that are reasonable. Thus, for example, I have no basis to award costs for professional services provided by one Charles M. Miller. He was not a witness at trial, and I have no idea what his services involved. I have no basis to award costs for professional services rendered by Genesis Weather Solutions, LLC. I can deduce that these services likely related to a contested trial issue, i.e., whether hail caused damage in the location of plaintiff's hotel on the date in question, but no one from that LLC testified at trial, and I cannot speculate on the nature, value or reasonableness of the costs incurred.

Accordingly, the best I can do is to attempt to identify costs that, on the face of the document, appear likely to have been reasonable. On that basis, and using the plaintiff's categories, I award the following costs:

Court Costs, Depositions, Copies, Filing fees:          $2,804.10.[5]

---

[5] I gave the plaintiff the benefit of the doubt regarding most of the costs in this category, as they are expenses routinely incurred in civil litigation. I did not include the Lightning Legal & Investigation, LLC service process fees. On review of my trial notes and the portions of testimony that have been

| | |
|---|---|
| Charles M. Miller: | $0 |
| Genesis Weather Solutions, LLC | $0 |
| Office Charges, Federal Express, travel, legal research: | $17,024.45[6] |

## ORDER

Plaintiff's amended motion for determination of attorney's fees and costs, ECF No. 95, is granted. The Court awards to the plaintiff, Colorado Hospitality Services, Inc., d/b/a Peoria Hospitality, LLC, and against the defendant, Owners Insurance Company, $154,847.50 in attorney's fees and $19,828.55 in costs. An amended final judgment should be issued accordingly.

DATED this 31st day of December, 2015.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

---

transcribed, it was not clear to me what witnesses, if any, had to be subpoenaed to trial. Plaintiff took no depositions. Some part of this cost might have been for service of the summons and complaint, but I had no way to isolate that cost.

[6] The Pacer, Federal Express and telephone charges are small and appear to be reasonable. The Westlaw legal research charges are hard to quarrel with. If I assume that the charges were incurred, as I do; and find that online research is customary and reasonable, which I do; then the only other supporting information would be counsel's representation that the research was necessary, which I have to presume. The big item was travel and related (presumably lodging and meals) expenses for the two Chicago attorneys and their paralegal. Generally the dollar amounts for the trial week appear to be reasonable. I eliminated the "travel" costs other than for trial unless they appeared to relate to a court appearance in the case. I eliminated the "travel" charge for Denver counsel on the assumption that local travel from home to work would not be a charge typically passed on to a client. This might not be what that charge was for, and I accept that I might have eliminated some reasonable costs there and elsewhere. But that is the consequence of listing costs that I could not find were probably reasonable on their face.